# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AL HOLIFIELD,

                Petitioner,

        v.                         **Case No. 14-CV-1486**

GARY MITCHELL,[1]

                Respondent.

# REPORT AND RECOMMENDATION

## I.     Procedural History

Al Holifield is incarcerated pursuant to a judgment of the Milwaukee County Circuit Court. Following a jury trial Holifield was convicted of three counts of manufacture or delivery of heroin, one count of possession of heroin, and maintaining a drug trafficking place, all felonies. (ECF No. 12-2 at 2 (all numbering reflects the ECF pagination).) He was also convicted of possession of THC and possession of a controlled substance, both misdemeanors. (ECF No. 12-2 at 5.) After unsuccessfully

---

[1] Holifield is incarcerated at the Marshall E. Sherrer Correctional Center. (ECF No. 40.) The superintendent of that institution is Gary Mitchell, https://doc.wi.gov/Pages/OffenderInformation/ AdultInstitutions/MarshallESherrerCorrectionalCenter.aspx (last visited May 30, 2018). Therefore, in accordance with Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption is updated accordingly.

appealing his convictions Holifield filed a petition for a writ of habeas corpus in this district. (ECF No. 1.) The Honorable Pamela Pepper recently referred Holifield's petition to this court for the issuance of a report and recommendation as to its resolution. (ECF No. 42.)

The respondent opposes the petition. (ECF No. 23.) In doing so, he submitted a 30-page single-spaced brief, with 89 footnotes, in opposition. The court's Local Rules require that the text of all briefs be double-spaced. Gen. L. R. 5(a)(5) (E.D. Wis.). In Judge Griesbach's Rule 4 order (ECF No. 6), citing Civil L.R. 7(f), he reminded the parties that their opening briefs were not to exceed thirty pages. Ironically, in his non-compliant brief counsel for the respondent criticizes Holifield for submitting a two-part brief that also exceeded the 30-page limit despite being similarly single-spaced. (*See* ECF No. 23 at 2, fn.2.) Ordinarily, courts will strike such non-compliant briefs and order the parties to submit briefs that comply with the local rules. Some judges may impose sanctions if the non-compliance appeared intentional. However, given the posture of this case, the court will not take any action here. The court raises the issue only as a warning that a failure to follow the local rules and the court's explicit orders regarding the length and format of brief may have consequences.

## II.    Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of

the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court generally may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)).

## III.     Analysis

In his Rule 4 order Judge Griesbach identified ten claims in Holifield's habeas petition. Several of them allege that Holifield's trial counsel was ineffective in one way or another. To prevail on such a claim a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Perrone v. United States*, No. 16-2437, 2018 U.S. App. LEXIS 12465, at *22 (7th Cir. May 14, 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "On the performance prong, he 'must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (internal quotation marks omitted)). "On the prejudice prong, he must show that 'but for counsel's errors, there is a reasonable probability that the result would have been different.'" *Id.* (quoting *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016)). "As with the first prong, there is a presumption that the petitioner has not

suffered prejudice." *Id.* (citing *Graf*, 827 F.3d at 584-85). Thus, the court's review of an ineffective assistance of counsel claim is "doubly deferential" when presented in a petition for a writ of habeas corpus. *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018) (quoting *Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016)).

### A. Search Warrant

On September 1, 2010, Investigator Jon Rivamonte of the Milwaukee Metro Drug Enforcement Group applied for a search warrant for a single-family house in the city of Milwaukee. Rivamonte submitted a seven-page affidavit in support of the request for a search warrant. According to the affidavit, Rivamonte worked with a confidential informant, who completed three drug purchases from Holifield—on August 11, August 16 and August 31, 2010. The affidavit stated that to arrange each sale, the confidential informant called Holifield in Rivamonte's presence and arranged to meet at a particular McDonald's restaurant.

Holifield alleges the search warrant was unlawful for a variety of reasons: because it was based on unsworn statements of an informant, because it was dated August 31, 2010 even though the affidavit was dated September 1, 2010, and because another officer involved in the investigation administered the oath in connection with the affidavit. (ECF No. 1 at 6-7.) He also alleges that the affidavit contained false and misleading information as to Holifield's residence and who owned that property. (ECF

No. 1-1 at 1.) Holifield alleges that his attorney was ineffective because she failed to file a motion to suppress evidence obtained pursuant to the warrant.

The court has independently reviewed the search warrant (ECF No. 2-1 at 35-41) and finds that, even accepting as true Holifield's arguments as to alleged errors and misleading information, the affidavit nonetheless established probable cause to search the target residence. *Cf. Franks v. Delaware*, 438 U.S. 154, 156 (1978). As such, a motion to suppress would have been unsuccessful. Consequently, because it was neither unreasonable nor prejudicial for counsel to forego the motion, Holifield's attorney was not ineffective for not filing such a motion. *See Strickland*, 466 U.S. at 691-92.

The investigation involved three controlled buys of heroin. The same suspected seller (identified in the warrant as Holifield, but for present purposes the court will accept Holifield's argument that investigators had not adequately identified Holifield at that time) was observed by law enforcement as being involved in each sale. Immediately following the second controlled buy, the suspected seller went to the residence that the officers sought a warrant to search. Immediately before the third controlled buy, the suspected seller went to the target residence, entered the house briefly, and then drove to the meeting with the informant, where he exchanged heroin for cash. These observations were consistent with the suspected seller using the target residence to store controlled substances and the proceeds of their sale.

Holifield points to numerous alleged deficiencies in the search warrant (ECF No. 14-1 at 2-8), but all are inconsequential. For example, it was not necessary for the affidavit to establish that Holifield had control over the residence in order for officers to obtain a warrant to search it. In any event, as the affidavit recounts, Holifield identified the home as his residence at the time of at least one prior arrest and in Wisconsin Department of Transportation records. Moreover, it was the address listed on the criminal complaint (ECF No. 2-1 at 69), and at his initial appearance Holifield stated, through counsel, "His address is the same one as the one listed in the criminal complaint …" (ECF No. 12-3 at 324).

Nor was it necessary for the affidavit to state, as Holifield says it should have, that Holifield was observed to "leave directly from the residence and then return directly back home like in other controlled buys cases." (ECF No. 14-1 at 2.) Probable cause may be supported by reasonable inferences. Although officers could have recorded the controlled buys or done a traffic stop to identify the persons in the vehicle, they were not required to do so.

Nor did the affidavit omit anything essential with respect to the informant. Given the nature of the informant's involvement, it was unnecessary for Rivamonte to establish at length the reliability of the informant or show that the informant had known Holifield before the controlled buys. The investigators were not simply relying on the word of an informant as, for example, when officers seek a warrant to search a

home based solely on an informant telling them that he saw contraband there. Rather, the information from the informant was independently corroborated by the officers' monitoring of the calls and their observations of the controlled buys. The fact that the informant did not personally know Holifield (but rather contacted him only because he was given Holifield's number from a friend) did not undermine probable cause. And an informant is not required to appear before the issuing court commissioner or offer sworn testimony in support of the warrant.

Even if the informant's identification of Holifield was suspect, law enforcement apparently independently observed and identified Holifield. Moreover, law enforcement were aided by other facts, including that Holifield had identified the target residence as his residence on Department of Transportation records and previously to law enforcement. "[I]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Sewell*, 780 F.3d 839, 846 (7th Cir. 2015) (quoting *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014) (emphasis omitted)).

Finally, Holifield had an extensive arrest history, including numerous arrests related to drugs.

Taken together, these facts added up to probable cause to search the target residence for evidence of drug dealing.

It is true that the search warrant contains an obvious error regarding the date. At the bottom of the warrant, handwritten is "11:03 AM" followed by the typed date of

"August 31st, 2010," suggesting that that was the date and time the court commissioner signed the warrant. (ECF No. 2-1 at 34.) However, at the top of warrant "09/1/2010" is typed as the date. (ECF No. 2-1 at 34.) And the jurat of the affidavit states, "Subscribed and sworn to before me this 1st day of September, 2010." (ECF No. 2-1 at 41.) Holifield contends that this shows that the warrant was signed a day before the affidavit and necessarily was unsupported by the facts alleged in the affidavit.

Of course, the more logical conclusion is that the date typed in at the bottom of the search warrant (August 31st, 2010) was typed in the day before the warrant was signed by the court commissioner, while the date at the top of that warrant and on the affidavit were correct. In support of his argument Holifield points to the fact that Rivamonte answered affirmatively when asked at trial if he applied for the search warrant on the same day as the last controlled buy, *i.e.*, on August 31, 2010. (ECF No. 12-5 at 279.) But the fact that he prepared the application for the search warrant on August 31, 2010, does not mean that that was the date on which the warrant was actually signed. Indeed, Rivamonte's testimony actually helps explain the discrepancy in dates-- he applied for the warrant on August 31, 2010, which is why the warrant states that date. For whatever reason the warrant and affidavit were not signed until the following day and no one updated the one reference to the August 31st date.

The court of appeals characterized the date discrepancy as a technical irregularity that did not merit suppression. (ECF No. 2-1 at 19, ¶ 17 (quoting Wis. Stat.

§ 968.22)); *see also Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Such a conclusion is logical and reasonable; the alternative would require the extraordinary leap that the court commissioner wholly abandoned his judicial role and approved a search of a home without even a proffer of a factual basis. Holifield offers nothing to support this conclusion other than the mere fact of two dates.

Finally, Holifield takes issue with the fact that the notary for the affidavit was a law enforcement officer involved in the investigation. The court finds no problem with this. The judicial officer issuing the warrant must be neutral and detached. *See Shadwick v. Tampa*, 407 U.S. 345, 350 (1972); *Johnson v. United States*, 333 U.S. 10, 14 (1948). Here, that was the court commissioner. *See* Wis. Stat. § 757.69(1)(b). The notary does not issue the warrant, *see, generally*, Wis. Stat. § 968.12, but merely administers the oath to the affiant, thereby subjecting the affiant to perjury should his statements be untrue, *see* Wis. Stat. § 137.01(5). Because in this context the notary has no role that requires neutrality, there is nothing improper about the notary being an officer involved in the investigation. The primary case upon which Holifield relies, *People ex rel. Gilarmini v. Elrod*, 59 Ill. App. 3d 258, 260, 17 Ill. Dec. 160, 162, 376 N.E.2d 53, 55 (1978), is not binding on this court, is inapplicable to a habeas proceeding, and is distinguishable. *Gilarmini* dealt with a question of procedure under 18 U.S.C. § 3182 regarding the issuance of a rendition warrant whereby an "affidavit made before a magistrate" was

required. *Id.* The court held that a state notary was not a "magistrate" within the scope of the federal statute. *Id.*

Other cases cited by Holifield, to the extent the court can discern any relevance, are similarly unhelpful. For example, in *Coolidge v. New Hampshire*, 403 U.S. 443, 447 (1971), the Court found defective a warrant issued by an Attorney General acting as a justice of the peace. That case is distinguishable because, again, here the investigating officer did not issue the warrant; the neutral and detached commissioner did.

In short, the court finds that any motion to suppress would have been unsuccessful. Therefore, it was neither unreasonable nor prejudicial for Holifield's attorney to forego a motion to suppress.

### B. Personal Jurisdiction

Citing Wis. Stat. §§ 801.02 and 801.09, Holifield argues that the circuit court never obtained personal jurisdiction over him because certain documents were never filed with the Clerk of Court and the search warrant was not returned within 48 hours. (ECF No. 14-1 at 10.) But these statutes are rules of civil procedure, inapplicable to a criminal proceeding. The court finds no merit to this argument. At best, any failure to follow procedural requirements regarding the timing of filing of certain documents or the return of a search warrant was a harmless technical error.

### C. *Riverside*

Following a warrantless arrest, a person generally may be detained for no more than 48-hours unless a judicial officer finds the arrest was supported by probable cause. *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Holifield contends that no such timely probable cause determination was made in his case. As a result, he says that his lawyer was ineffective for failing to seek relief under *Riverside*. (ECF No. 1 at 8.)

However, the record includes a standard Wisconsin Circuit Court "Probable Cause Statement and Judicial Determination" form (CR-215) indicating that at 3:15 PM on September 3, 2010, a court commissioner found probable cause for Holifield's arrest, well within 48 hours of Holifield's arrest at 5:30 AM on September 2, 2010. (ECF No. 12-2 at 314-15.) Holifield contends this document was actually signed at some point after his September 6, 2010 initial appearance and backdated to make it appear as though there was a timely probable cause finding. He believes there was a second, now lost, CR-215 that was presented at his initial appearance. He then speculates that this allegedly missing CR-215 might have reflected an untimely probable cause finding.

The only support Holifield offers for his theory of a second CR-215 is an isolated statement during his initial appearance. He alleges that the prosecutor stated at his September 6, 2010 initial appearance that Holifield's bail was set at $5,000 (ECF No. 2 at 7) even though the CR-215 in the record reflects that bail was set at $10,000.

But Holifield's argument depends in part upon a misrepresentation of the record. It is unclear from the transcript of the initial appearance who, if anyone, reported that Holifield's bail had been set at $5,000. The record includes the following from the commissioner: "What's his bail presently set at on his CR-215? Five? That's all? Really? He's lucky he didn't have me set his bail on this." (ECF No. 12-5 at 5.) The record does not identify who answered the commissioner's question, or if the commissioner answered it himself upon finding the answer in the record. Even if the court were to take the significant leap and conclude that this passage supports a conclusion that a second CR-215 existed, it would not help Holifield because it would not show that the missing CR-215 reflected an untimely probable cause determination or that the one in the record was post-dated.

But speculation as to the veracity of any CR-215, or when a judicial officer found probable cause, is immaterial. Even if Holifield could prove that the state failed to comply with *Riverside*'s 48-hour rule, he would not be entitled to relief. Holifield would not have been entitled to a dismissal of the charges against him simply by virtue of a *Riverside* violation. *See Powell v. Nevada*, 511 U.S. 79, 84 (1994). There is no indication that any improper delay led to additional evidence against Holifield. For example, it does not appear Holifield made an incriminating statement after the expiration of the 48-hours. *Cf. Shallcross v. Pollard*, No. 15-CV-1136-JPS, 2016 U.S. Dist. LEXIS 143394, at *29 (E.D. Wis. Oct. 17, 2016).

In sum, Holifield is not entitled to habeas relief based on an alleged *Riverside* violation.

**D. Identification**

Holifield argues that a photographic identification procedure was unduly suggestive because the informant identified him by way of a single photograph. (ECF No. 1 at 9.) The court of appeals concluded that Holifield waived this argument by not presenting it in the circuit court and that, by failing to respond to the state's argument that any challenge to the use of the single photograph would have failed even if not waived, Holifield conceded this point. (ECF No. 2-1 at 23, ¶ 26.)

As noted by the court of appeals, Holifield waived this argument by not presenting it in the circuit court. He cannot revive it now. Consequently, he has procedurally defaulted this claim. To the extent Holifield seeks to evade waiver by recasting the identification claims through the lens of ineffective assistance of counsel, Holifield again procedurally defaulted this claim by conceding (by failing to address the issue in reply) that a motion would have failed if filed.

Even if the court were to look past these defaults and consider the merits of the claim, the court would nonetheless conclude that Holifield is not entitled to relief. Even if the photographic identification procedure was found to be unduly suggestive, the state court could reasonably find under the totality of the circumstances that the identification was nonetheless "sufficiently reliable to prevent misidentification," *see*

*Gregory-Bey v. Hanks*, 332 F.3d 1036, 1045 (7th Cir. 2003) (citing *United States v. Traeger*, 289 F.3d 461, 473-74 (7th Cir. 2002); *United States v. Harris*, 281 F.3d 667, 670 (2002)). Contrary to what Holifield says, the informant testified that he and Holifield were *not* strangers before the first controlled buy. The informant testified that he previously had gone with a friend to purchase heroin from Holifield. (ECF No. 12-5 at 210, 212.) In each controlled buy the informant reportedly engaged in small talk with Holifield in encounters lasting a minute or two. (ECF No. 12-5 at 192, 199, 208.) The informant also knew Holifield's first name and knew he lived in the area of where the controlled buys occurred. (ECF No. 12-5 at 213.) Thus, this was not a situation where a witness was asked to identify a stranger after an isolated, high-stress encounter. *See, e.g., Stovall v. Denno*, 388 U.S. 293, 295 (1967); *Perry v. New Hampshire*, 565 U.S. 228, 244 (2012); *United States v. Russell*, 532 F.2d 1063, 1066 (6th Cir. 1976) ("There is a great potential for misidentification when a witness identifies a stranger based solely upon a single brief observation, and this risk is increased when the observation was made at a time of stress or excitement.").

### E.  Informant's Immunity

Holifield alleges that the informant received immunity but his attorney failed to investigate it. (ECF No. 1-1 at 3.) Specifically, he contends that the informant received "a deal on a forgery case that he had pending at the time of trial." (ECF No. 14-1 at 18.) He contends that matter was resolved by way of a deferred prosecution agreement, and

notes that the informant's attorney was present during his testimony against Holifield. (ECF No. 14-1 at 18.) In support he points to *Burgin v. Broglin*, 900 F.2d 990, 992 (7th Cir. 1990), a case in which a witness testified that she had not been promised anything in exchange for her testimony but, following her testimony, her pending charges were reduced and she received a suspended prison sentence. Holifield asserts, "The court reversed the case based on a due process violation." (ECF No. 14-1 at 19.) Holifield argues that the trial court erred by limiting Holifield's cross-examination of the informant regarding what consideration the informant might be receiving for his testimony (ECF No. 1-1 at 3) and that his attorney was ineffective for failing to elicit the fact that the informant's attorney was present in court during the informant's testimony. (ECF No. 1-1 at 3-4.)

Holifield is correct that the court of appeals in *Burgin* reversed the district court, but incorrect on what that reversal meant. Although the court of appeals reversed the district court's grant of habeas relief to the petitioner, it did not assess the merits of the petitioner's due process claim. Instead, it found that the petitioner had not properly presented to the state court the issue of whether the witness was testifying in exchange for benefits in her own case. Thus, *Burgin* is of no help to Holifield. To the extent it is relevant at all, it is distinguishable because Burgin supported his assertion of a pre-existing deal through the testimony of a witness who reported hearing the witness, her attorney, and the prosecutor discussing the deal before her testimony. Holifield offers

nothing more than the fact that the informant subsequently received a favorable outcome.

The Wisconsin Court of Appeals rejected Holifield's argument that the informant testified in exchange for favorable treatment in his case, noting not only that Holifiled offers "mere assertions of facts not in the Record" in an attempt to support it but that the assertions are actually "contradicted by the Record." (ECF No. 2-1 at 21, ¶ 21.) The informant and the investigator both testified that the informant was *not* promised anything in exchange for his testimony. (ECF No. 2-1 at 21, ¶ 21.) Therefore, "[t]here is no merit to Holifield's ineffective assistance claim." (ECF No. 2-1 at 21, ¶ 21.)

The court finds that the court of appeals' conclusion was reasonable. Therefore, Holifield is not entitled to relief on this basis. The fact that the informant's pending criminal charges were resolved in a manner favorable to him does not prove that his testimony was the product of any promises of leniency. Rather, in the court's experience, the outcome is quite common, especially in specialty courts like the drug treatment court that was handling the pending charges against the informant. (ECF No. 12-5 at 168.) Significantly, the assistant district attorney prosecuting Holifield explicitly informed the court that he had no involvement in the informant's forgery case and had had no discussions with the prosecutor handling that case. (ECF No. 12-5 at 168-69.) There is no hint that Holifield's lawyer reasonably should have done anything more,

much less that doing anything further would have benefitted Holifield. And it was immaterial that the informant's attorney was present during the informant's testimony.

Therefore, no basis exists for concluding that Holifield was denied the effective assistance of counsel as a result of his lawyer failing to further investigate any immunity supposedly provided to the informant or for not pointing out to the jury that the informant's lawyer was present during his testimony.

### F. Informant's Statements

Holifield alleges that the state withheld exculpatory evidence—specifically, audio or written statements of the informant. (ECF No. 1-1 at 4.) However, he has not shown that any such statements exist; he simply speculates that such recorded statements *should* exist. (ECF No. 14-1 at 21-22.) He "requests an evidentiary hearing to determine the whereabouts of the statements." (ECF Nos. 2 at 12; 14-1 at 23.) But without more than his own speculation that statements exist, the court finds no basis for a hearing. The court finds that Holifield is not entitled to habeas relief on this basis.

### G. Identification of Natasha Davis

Holifield asserts that officers falsely identified Natasha Davis, his girlfriend, as being present during a controlled buy, and that he had evidence that she was actually working in Michigan at the time. (ECF No. 1-1 at 5.) The court refused to let Holifield present the evidence. (ECF No. 1-1 at 5.) Holifield argues that his lawyer was ineffective for not doing more to get this evidence before the jury. (ECF No. 1-1 at 6.) He also

argues that counsel failed to contact the witnesses necessary to corroborate that Davis was working out of state at the relevant time. (ECF No. 14-1 at 25.)

The evidence that Holifield sought to introduce to demonstrate that Davis could not have been where the state said she was at the time of the subject controlled buy included, most relevantly, a handwritten receipt dated August 21, 2010, identified as being from "Gold Nugget" to "Luscious" for "Dancing." (ECF No. 12-3 at 162; *see also* ECF No. 12-4 at 208 (letter from Raissa Clarkson stating she is "writing to verify that Natash [sic] Davis (Luscious) was working for me 8/30/10 9/3/10[.]")) Holifield's attorney argued for the admission of this evidence. (ECF No. 12-5 at 532-42.) But, in exercising its discretion, the court concluded that the purported business records were hearsay and that he was "not going to have a trial within a trial" on the question of whether Davis was misidentified as being present at one of the controlled buys. (ECF No. 12-5 at 541, 543.) The court, however, did allow Davis to testify that she was working out of state at the time of the subject controlled buy. (ECF No. 12-5 at 544.)

Contrary to Holifield's contention, in arguing for the admission of the documents regarding Davis's whereabouts at the time of the subject controlled buy, Holifield's attorney did more than just rely on the handwritten receipts. She stated in conjunction with her argument regarding the admissibility of the receipts:

> I've been trying for about ten days to get somebody from the Golden Nugget to call me back so I can get something that more resembles a business record and I have not been able to get a hold of anybody, but Mr. Holifield has just told me that he has a personal cell phone number for the

individual named Classy and it's --I guess it is possible that I could try to reach this person and this person could fax me something tonight which I could have for the Court tomorrow.

(ECF No. 12-5 at 542.) Counsel's efforts were reasonable, as was the court's ruling. The alleged misidentification of Davis was a minor and tangential issue that only in the most minor sense plausibly supported Holifield's defense. Permitting Davis to testify that she was out-of-state, but precluding suspect evidence that purported to support her testimony, was a reasonable evidentiary ruling that did not deprive Holifield of his constitutional right to present a defense. The court finds no basis for habeas relief on this claim.

### H. Drug Analyst's Report

Holifield contends that his lawyer was ineffective for stipulating that the state could introduce the report of a drug analysist (that drugs found in the home were heroin and cocaine) rather than insisting that the analyst testify and be subject to cross-examination. (ECF Nos. 1-1 at 6; 14-1 at 28-29.) Absent proof that the analyst's report was inaccurate and that the substances tested were not cocaine and heroin, Holifield has failed to demonstrate that he was prejudiced by any alleged ineffectiveness on the part of his lawyer.

### I. Sufficiency of the Evidence

Holifield also contends that the evidence adduced at trial was insufficient to sustain his conviction. (ECF No. 1-1 at 7.) The trial court and the court of appeals

rejected this argument, noting that the controlled substances were located in pants that officers found at the base of the bed where Holifield has been sleeping. (ECF No. 2-1 at 20, ¶ 19.) Holifield denied the pants were his. But also found in the pants was the phone the informant called to set up the most-recent controlled buy. Both the trial court and the court of appeals concluded that this circumstantial evidence was sufficient to sustain the jury's verdict. (ECF No. 2-1 at 20, ¶ 19.) This court agrees.

Holifield also argues that the identification testimony was "false" and that, without it, there was insufficient evidence to sustain his conviction. (ECF No. 14-1 at 29.) But, as discussed above, the evidence was properly admitted. The court finds sufficient evidence existed to sustain his convictions.

**J. Juvenile Record**

Finally, Holifield argues that the trial court abused its discretion by considering his juvenile record for sentencing purposes. (ECF No. 1-1 at 7.) Specifically, he contends, "The United States Supreme Court has ruled that the defendant's juvenile record may not be used against him at his adult sentencing hearing, because it violates the defendant's Sixth Amendment right to counsel." (ECF No. 14-1 at 29.)

Holifield does not support this assertion with a citation to any authority. Juvenile offenses are routinely and appropriately considered for sentencing purposes. *See, e.g.*, United States Sentencing Commission, Guidelines Manual, § 4A1.2(d). However, relying on cases in which the Supreme Court held that *adult* convictions obtained in

violation of the right to counsel recognized in *Gideon v. Wainwright*, 372 U.S. 335 (1963) cannot be used to enhance a subsequent sentence, the Wisconsin Supreme Court has held that juvenile adjudications occurring before juveniles had a right to counsel in juvenile proceedings may not be considered for sentencing purposes. *Stockwell v. State*, 59 Wis. 2d 21, 29-33, 207 N.W.2d 883, 887-89 (1973) (discussing *Loper v. Beto*, 405 U.S. 473 (1972); *United States v. Tucker*, 404 U.S. 443 (1972)); *Moore v. State*, 83 Wis. 2d 285, 308-09, 265 N.W.2d 540, 550 (1978); *see also Majchszak v. Ralston*, 454 F. Supp. 1137, 1141 n.1 (W.D. Wis. 1978).

But even this limited exception is of no help to Holifield. Juveniles have had a right to counsel in juvenile proceedings since 1967. *In re Gault*, 387 U.S. 1 (1967). Holifield was born in 1975. (ECF No. 12-3 at 144.) As a result, he had a right to counsel in all of his juvenile proceedings. Holifield does not argue, much less present evidence to support, that he was not represented by counsel with respect to any juvenile adjudication relied upon by the court in sentencing.

Consequently, this argument does not entitle Holifield to habeas relief.

## IV.    Conclusion

Having concluded that Holifield is not entitled to relief on any claim presented in his petition, **IT IS THEREFORE RECOMMENDED** that Holifield's petition for a writ of habeas corpus be **denied**.

**IT IS FURTHER RECOMMENDED** that the court deny Holifield a certificate of appealability, Holifield having failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) whereby written objections to any order herein or part thereof may be filed within fourteen days of service of this order. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 31st day of May, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge