# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

AL HOLIFIELD,

    **Petitioner,**

    **v.**                                        **Case No. 14-CV-1486-SCD**

GARY MITCHELL,

    **Respondent.**

---

## DECISION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

---

In 2011, Al Holifield was convicted of multiple drug offenses in Wisconsin state court. After his state appeal was rejected, Holifield filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is in custody in violation of the United States Constitution for at least ten different reasons. The respondent maintains that Holifield has not satisfied his burden of proving that his claims merit relief under the deferential standards set forth in § 2254. I agree. Because the state court's decision denying most of his claims was not objectively unreasonable and because the other claims are procedurally barred, Holifield is not entitled to relief under § 2254. Thus, his petitioner will be denied, and this action will be dismissed.

# BACKGROUND

## I. State-court proceedings

### A. Search warrant

On September 1, 2010, Investigator Jon Rivamonte of the Milwaukee Metro Drug Enforcement Group applied for a warrant to search a single-family house located at 1544 W. Groeling Avenue in the city of Milwaukee. *See* ECF No. 12-2 at 238–44. Rivamonte submitted a seven-page affidavit in support of the search-warrant application. According to the affidavit, Rivamonte worked with a reliable confidential informant who purchased heroin from Holifield on August 11, August 16, and August 31, 2010. The affidavit indicated that, for each sale, the informant called Holifield in Rivamonte's presence and arranged to meet at a particular McDonald's restaurant. *Id.* at 239. After the August 16 controlled buy, officers followed Holifield's car—an older model, blue Chevrolet Corsica—to the area of 1500 W. Groeling Avenue. *Id.* at 239–40. Shortly thereafter, an officer saw Holifield standing on the front porch of 1544 W. Groeling Avenue. *Id.* at 240. On August 31, officers observed Holifield park in front of 1544 W. Groeling Avenue, exit the Corsica, and go into the residence. A few minutes later, Holifield exited the residence and got into the driver's seat of the Corsica; his girlfriend, Natasha Davis, was sitting in the front passenger seat. Officers then observed Holifield drive to the meet location where he sold heroin to the informant. The affidavit also indicated that Holifield listed 1544 W. Groeling Avenue as his home address with the DOT and that Holifield stated he lived at that residence when he was arrested in August 2009. *Id.* at 242–43.

Based on the affidavit, a judicial court commissioner signed a no-knock search warrant for 1544 W. Groeling Avenue. *See* ECF No. 12-2 at 237. The commissioner handwrote the

Case 1:14-cv-01486-SCD   Filed 05/29/20   Page 2 of 25   Document 61

time he signed the warrant (11:03 a.m.); the date already typed on the warrant was August 31st, 2010. *Id.* The commissioner ordered officers to return the warrant within forty-eight hours. *Id.*

Officers executed the warrant in the early morning hours of September 2, 2010. *See* ECF No. 12-2 at 298; *see also* ECF No. 12-4 at 76. They found Holifield and his cousin asleep in a second-floor bedroom. On the floor at the foot of the bed Holifield was sleeping in, officers found a pair of pants that contained cash, marijuana, heroin, one ecstasy pill, and a cell phone that was assigned the same phone number that the informant used to contact Holifield to arrange the August 31 controlled buy. *See* ECF No. 12-2 at 245, 298; *see also* ECF No. 12-4 at 76. During the search of the home, officers recovered nine bags of crack cocaine under an armchair cushion by the front door, a bag of marijuana in the drawer under the kitchen table, seven bags of cocaine, two digital scales, and approximately $30,000 in cash. *See* ECF No. 12-2 at 245, 299. Holifield, who was one of nine people in the house at the time the warrant was executed, was placed under arrest around 5:30 a.m. *See id.* at 314; *see also* ECF No. 12-4 at 76. At 3:15 p.m. the following day, a judicial court commissioner signed a "Probable Cause Statement and Judicial Determination" form (CR-215) indicating that there was probable cause for Holifield's arrest and setting his initial bail at $10,000. *See* ECF No. 12-2 at 314–15.

## B. Circuit-court proceedings

On September 5, 2010, Holifield was charged in Milwaukee County Circuit Court with three counts of delivering a controlled substance (heroin, three grams or less) for the August 11, August 16, and August 31 sales to the informant. *See* ECF No. 12-2 at 29–33. Based on evidence recovered during the search of the house, Holifield was also charged with possession of a controlled substance (heroin) and keeping a drug house as a party to a crime. *Id.* At

3

Holifield's initial appearance the following day, a judicial court commissioner found probable cause for each of the five charges and set bail at $2,500. *See* ECF No. 12-5 at 2–7.

Holifield's appointed lawyer did not file any pretrial motions, and the case proceeded to trial. *See* ECF No. 12-2 at 17–20. On the eve of trial, the State filed an amended information that added two misdemeanor charges: possession of THC and possession of a non-narcotic controlled substance (MDMA). *See id.* at 43–45. At trial, the State presented detailed testimony about the three controlled buys, including testimony from the informant, Rivamonte, and the officers who conducted surveillance during the buys. *See* ECF No. 12-5 at 49–728. The State also presented evidence about what they found when they executed the search warrant.

The defense's theory was that the informant erroneously identified Holifield as the man who sold him drugs and that the seller was somebody else, possibly Holifield's brother. *See* ECF No. 12-4 at 77. To support this theory, the defense presented testimony to refute the informant's claim that Holifield's girlfriend, Natasha Davis, was in the car during the August 31 controlled buy. Davis testified that she was working in Michigan at that time, so she couldn't have been in the car with Holifield and the informant. *See* ECF No. 12-5 at 554–55. The theory was that if the informant mistakenly identified Davis, then he could have also mistakenly identified Holifield. *See id.* at 689. Holifield also testified in his own defense. *See id.* at 574–634. He claimed that he never sold drugs to the informant, that the pants found next to his bed were not his, and that he was not living at 1544 W. Groeling Avenue (his grandparents' house) during the summer of 2010. In her closing argument, defense counsel focused on the mistaken-identity theory, which in her view, was set in motion when Rivamonte showed the informant a single photograph of Holifield and asked if he was the

guy selling drugs. *See id.* at 673–99. The jury found Hollifield guilty of all seven counts. *See* ECF No. 12-2 at 128–34.

On August 1, 2011, Holifield was sentenced to four consecutive terms of one year of initial confinement and one year of extended supervision for the three counts of delivering heroin and the one count of possessing heroin. *See* ECF No. 12-2 at 230–34; *see also* ECF No. 12-5 at 732–67. The court imposed concurrent sentences of one year of initial confinement and one year of extended supervision for maintaining a drug house; thirty days in the house of correction for possession of THC; and ten days in the house of correction for possession of a controlled substance. *See id.*

### C. Post-conviction/appellate proceedings

After firing his post-conviction/appellate lawyer, Holifield filed a *pro se* post-conviction motion seeking a new trial. *See* ECF No. 12-2 at 255–300. The trial court denied the motion without a hearing. *Id.* at 303–12. Holifield appealed, filing a fifty-page brief that raised seventeen main issues. *See* ECF No. 12-3 at 31–221. On July 2, 2013, the Wisconsin Court of Appeals issued a decision affirming Holifield's judgment of conviction and the order denying his postconviction motion. *See* ECF No. 12-4 at 74–93; *see also State v. Holifield*, Appeal No. 2012AP1194-CR, 2013 Wisc. App. LEXIS 555 (Wis. Ct. App. July 2, 2013). Holifield sought review of the appellate court's decision. *See* ECF No. 12-4 at 94–228. The Wisconsin Supreme Court summarily denied his petition for review on November 26, 2013. *See id.* at 232. He did not file a petition for certiorari in the United States Supreme Court. *See* ECF No. 1 at 4.

## II.     Federal habeas proceedings

On November 25, 2014, Holifield filed a federal habeas petition presenting ten grounds for relief. *See* ECF Nos. 1, 1-1. U.S. District Judge William C. Griesbach screened the petition and allowed Holifield to proceed on all ten claims. *See* ECF No. 6. Thereafter, the matter was reassigned to Chief Judge Pamela Pepper. After briefing was completed, *see* ECF Nos. 12, 14, 23, 24, Judge Pepper referred the matter to Magistrate Judge William E. Duffin for a report and recommendation, *see* ECF No. 42. Judge Duffin recommended that the petition be denied and that Holifield be denied a certificate of appealability. *See* ECF No. 43. On July 6, 2018, Holifield filed a motion requesting an evidentiary hearing. *See* ECF No. 48. The matter was reassigned to me in May 2020 after the parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 56, 59, 60. The Report and Recommendation is therefore moot.

## STANDARD OF REVIEW

Holifield's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

"A legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of [the Supreme Court]." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (opinion of O'Connor, J.).

Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court either "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred. Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). Thus, the petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Kubsch*, 838 F.3d at 859 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*,

558 U.S. 290, 301 (2010). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). To obtain relief under § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams,* 568 U.S. 289, 297 n.1 (2013)).

## ANALYSIS

Davis alleges ten grounds for relief in his habeas petition.

## I. Ineffective Assistance of Counsel: Search Warrant

Holifield alleges that his trial lawyer was ineffective for "failing to file a pre-trial motion to have the evidence from the unlawful search warrant suppressed from the trial court." ECF No. 1 at 6.

Criminal defendants have a constitutional right "to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To succeed on an ineffective-assistance-of-counsel claim, a habeas petitioner "must show both that counsel's representation fell below an objective standard of

8

reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (citing *Strickland*, 466 U.S. at 688, 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[C]ourts need not address both prongs of *Strickland*" if the petitioner makes an inadequate showing as to one. *Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012) (citing *Strickland*, 466 U.S. at 697).

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, when a *Strickland* claim is evaluated under § 2254(d)(1), the standard of review is said to be "doubly deferential." *See Mirzayance*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (per curiam)).

Holifield alleges that the warrant to search 1544 W. Groeling Avenue was defective because it was signed the day before the affidavit was notarized and because another officer involved in the investigation administered the oath in connection with the affidavit. ECF No. 1 at 7. He further alleges that the warrant lacked probable cause, contained false and misleading statements, was "rubber stamped" by the court commissioner, and impermissibly relied on unsworn statements from an informant. *Id.* at 6–7; ECF No. 1-1 at 1–2. Holifield claims his trial lawyer was ineffective for failing to seek suppression on these grounds.

9

The Wisconsin Court of Appeals determined that Holifield's trial lawyer was not deficient for failing to challenge the search warrant because a suppression motion would not have been successful. *See* ECF No. 12-4 at 79–80, 82 (citing *Strickland*, 466 U.S. at 687). Specifically, the court concluded that a search warrant signed by a court commissioner is valid in Wisconsin, the supporting affidavit was constitutionally adequate, and the nonconforming dates on the warrant and affidavit were a mere technical irregularity. *See id.*

The court of appeals reasonably applied *Strickland* to Holifield's search-warrant claims. First, the court reasonably determined that the warrant was not facially invalid. Wisconsin law permits judicial court commissioners to sign search warrants. *See* Wis. Stat. § 757.69(1)(b) ("A circuit court commissioner may . . . issue . . . search warrants."). Moreover, the fact that the affidavit was allegedly notarized by an officer involved in the investigation, *see* ECF No. 12-2 at 244, is not improper. A notary simply administers an oath to the affiant (here, Rivamonte), thereby subjecting the affiant to criminal liability if his statements prove untrue. *See* Wis. Stat. § 137.01(5). The notary did not sign the warrant. That was done by a judicial court commissioner, and Holifield has not presented any evidence to suggest that the commissioner here abandoned his detached and neutral role in authorizing the search. *See Shadwick v. Tampa*, 407 U.S. 345, 350 (1972) ("[A]n issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search.").

Holifield is right about the dates: the affidavit indicates that it was notarized on September 1, 2010, *see* ECF No. 12-2 at 244, while the warrant says it was signed on August 31, 2010, *see id.* at 237. By itself, however, this fact does not show that the commissioner authorized the warrant without the affidavit. As the court of appeals reasonably inferred, the

10

date mix-up was likely a technical irregularity—the August 31 date was probably typed on the warrant the day before the court commissioner signed it. And suppression is not an appropriate remedy for such errors. Holifield notes that Rivamonte testified he applied for the warrant the same day as the third controlled buy (i.e., August 31). *See* ECF No. 12-5 at 279. But that doesn't mean the warrant was also signed on that day. Indeed, Rivamonte's testimony provides an explanation for the date discrepancy—he prepared the warrant application on the 31st (which is why that date was pre-printed on the warrant) but, for whatever reason, it wasn't signed until the next day. Holifield has not presented any other evidence to support his theory that the commissioner signed the warrant without any supporting materials.

Second, the court of appeals reasonably determined that the warrant was constitutionally adequate. The affidavit submitted in support of the search-warrant application described three controlled buys of heroin from the same seller. Following the second controlled buy, officers followed the seller and observed him on the porch of 1544 W. Groeling Avenue. Similarly, officers observed the seller at that residence immediately prior to the third controlled buy. These facts provided probable cause to believe that officers would find contraband at the residence, regardless of whether the seller was Holifield or someone else who used the residence for his drug dealing. *See United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003) ("Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.").

Holifield's other attacks on the search warrant are unavailing. He contends the affidavit didn't sufficiently establish that he had control over the residence. But that fact was

11

not crucial to the probable-cause finding. In any event, the affidavit did establish Holifield's connection to the residence: he identified the home as his residence in DOT records and at the time of at least one prior arrest. *See* ECF No. 12-2 at 242–43. As the Seventh Circuit has observed, "in the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Sewell*, 780 F.3d 839, 846 (7th Cir. 2015) (quoting *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014)). Holifield also contends the affidavit should have stated that officers observed the seller leave directly from the residence and return to the residence immediately after each controlled buy or that officers should have stopped the suspect vehicle. While such detail would have provided additional support for the warrant, its absence was inconsequential. The affidavit provided sufficient factual information from which an issuing judicial officer could reasonably infer that indicia of drug trafficking would be found at the residence.

Furthermore, Holifield has not demonstrated any error with respect to the informant. Rivamonte explained in the affidavit why he believed the informant was credible. *See* ECF No. 12-2 at 241. Also, officers monitored the informant's calls with the seller and conducted surveillance during each controlled buy. Officers therefore independently corroborated the key details provided by the informant. Further signs of reliability were not necessary in this case. *See United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011) (explaining that probable cause is analyzed based on "the totality of the circumstances" set forth in the affidavit). Nor did the informant need to personally appear before the issuing court commissioner or offer sworn testimony in support of the warrant. *See Peck* 317 F.3d at 756 (listing this as merely *one factor* to consider in the analysis).

12

Holifield's final objection with respect to the warrant is that the false statements in the affidavit entitled him to a *Franks* hearing. ECF No. 1-1 at 1–2. In his brief in support of his petition, he argues that Rivamonte falsely stated he personally observed Holifield participate in the first controlled buy but later testified at trial that no one was close enough to see the drug deal. ECF No. 14-1 at 4. Holifield also argues that Rivamonte lied about the second controlled buy because he said that "detective Zuberbier did a drive by of the residence directly after the controlled buy and observed the petitioner standing on the front porch of the residence." *Id.* at 5. Finally, Holifield argues that the affidavit is misleading because Rivamonte said the informant had bought drugs from Holifield at 1544 W. Groeling when that information was not known by Rivamonte. *Id.*

I have reviewed the record, including the trial transcripts, and find no support for Holifield's arguments. He misrepresents the statements made in the affidavit supporting the warrant and misstates the trial testimony. With respect to the first controlled buy, the affidavit indicated that Rivamonte observed the informant enter the back seat of a station wagon parked at the meet location and that Rivamonte could see Holifield in the front passenger seat of the wagon and an unknown male in the driver seat. *See* ECF No. 12-2 at 239. This statement was consistent with Rivamonte's trial testimony. At trial, Rivamonte testified that he positively identified Holifield sitting in the passenger seat of the station wagon, but he wasn't close enough to see the hand-to-hand transaction or which individual inside the wagon made the sale. *See* No. 12-5 at 250–51, 305–06. As for the second controlled buy, the affidavit states that Detective Zuberbier conducted a drive by at the residence on August 16, 2010, and saw Holifield on the front porch. ECF No. 12-2 at 240. Zuberbier was called as a witness at trial, but he was not asked about his observations on August 16, 2010. *See* ECF No. 12-5 at 342–

13

53. Finally, contrary to Holifield's assertions, the affidavit does not state that the informant previously purchased drugs from Holifield. *See* ECF No. 12-2 at 238–44.

To the extent Holifield identifies other allegedly false or misleading statements in the affidavit, *see* ECF No. 14-1 at 4–8, these errors do not merit habeas relief. A criminal defendant is entitled to a *Franks* hearing to examine the sufficiency of a search warrant only if he makes "a 'substantial preliminary showing' that the warrant application contained a materially false statement made by law enforcement with deliberate or reckless disregard for the truth and that the false statement was necessary for the finding of probable cause." *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013)). The alleged errors identified by Holifield are not critical to the probable-cause finding. In other words, even accepting those errors as true, the affidavit still established probable cause to search the target residence.

Overall, Holifield has failed to establish that any of his arguments would have been successful had counsel filed a motion to suppress the evidence recovered from the residence. Because it was neither unreasonable nor prejudicial for counsel not to file a suppression motion, Holifield's attorney was not ineffective. Holifield therefore has not met his burden of demonstrating that he is entitled to relief under § 2254 on his search-warrant claim.

## II.    Personal Jurisdiction

Holifield alleges that the state circuit court lacked personal jurisdiction over him because "the criminal complaint, affidavit in support of the search warrant, and the probable cause judicial determination statement (CR-215) was never filed with the court clerk" and because the search warrant was not returned within forty-eight hours, as required by state law.

ECF No. 1 at 7–8. The Wisconsin Court of Appeals addressed these arguments collectively under Holifield's ascribed heading, "Authentication Requirements." *See* ECF No. 12-4 at 91–92. The court determined that the criminal complaint was in fact filed with the clerk and that Holifield's other arguments were undeveloped.

The court was correct about the complaint: the state-court docket indicates that the complaint was filed on September 5, 2010, *see* ECF No. 12-2 at 17, and the back page of the complaint was file-stamped by the "Clerk of Circuit Court" at 12:20 p.m. on that date, *see id.* at 33. Moreover, these claims are likely procedurally defaulted: Holifield did not raise them in the circuit court, and the court of appeals appears to have resolved them state-law waiver grounds. *See Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) (holding that federal courts cannot review the merits of habeas claims that were not fairly presented to the state courts or that were resolved on independent and adequate state-law grounds).

The claims also fail on their merit. The search-warrant affidavit did not need to be filed with the clerk of court, and the other documents were timely filed, *see* ECF No. 12-2 at 33 (complaint); ECF No. 12-2 at 315. (probable cause statement); ECF No. 12-2 at 245 (warrant return). Moreover, even if there were some procedural irregularity concerning these documents, Holifield has not provided any authority to support his claim that such technical errors deprived the circuit court of personal jurisdiction. His citation to Wisconsin statutes relating to civil procedure, *see* ECF No. 14-1 at 10–11, reflects a state-law issue not cognizable in federal habeas review. And while Holifield vaguely references "substantive due process," *see id.*, at no point in the state court appellate process did he frame this issue as a due-process violation. Accordingly, Holifield has not met his burden of demonstrating that he is entitled to relief under § 2254 on his personal-jurisdiction claim.

## III. Warrantless Arrest

In *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), the Supreme Court held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*[1]." Holifield alleges that the Probable Cause Statement was not signed within forty-eight hours of his warrantless arrest and that his trial lawyer was ineffective for failing to seek relief under *Riverside*. *See* ECF No. 1 at 8. The record belies his claim. Holifield was arrested without a warrant at 5:30 a.m. on September 2, 2010. *See* ECF No. 12-2 at 314. The Probable Cause Statement was signed by a judicial court commissioner at 3:15 p.m. on September 3, 2010— that is, well within forty-eight hours of Holifield's warrantless arrest.

Holifield contends the form was actually signed "months after the 48 hour time period" and backdated to September 3. ECF No. 1 at 8. He claims the original Probable Cause Statement wasn't presented until his initial appearance on September 5 and wasn't signed by the court commissioner. ECF No. 14-1 at 9–10. The record does contain an unsigned Probable Cause Statement. *See* ECF No. 12-3 at 209. But Holifield has not presented any evidence to support his theory that this form, rather than the signed one, is the original. He attempts to buttress his second-form theory by referencing the initial appearance transcript. According to Holifield, the State told the court commissioner that bail was set at $5,000 on the Probable Cause Statement when, in fact, the signed Statement shows it was $10,000. ECF No. 14-1 at 10.

Holifield misrepresents the record. At the initial appearance, the court commissioner stated, "What's his bail presently set at on his CR-215? Five? That's all? Really? He's lucky

---

[1] *Gerstein v. Pugh*, 420 U.S. 103 (1975).

Case 1:14-cv-01486-SCD   Filed 05/29/20   Page 16 of 25   Document 61

he didn't have me set his bail on this." ECF No. 12-5 at 5. This excerpt does not establish the unsigned Probable Cause Statement as the original. The court commissioner's comments may have been directed at anyone in the courtroom; it is not clear if anyone answered the question or whether he had any document in front of him. Moreover, Holifield's initial bail is not written on the unsigned version of the form. And the record contains no evidence of a third version of the form. Even if it did, the missing Probable Cause Statement would not necessarily prove that the signed version was backdated or that the probable-cause determination was untimely.

Ultimately, however, the case of the second (third?) Probable Cause Statement is immaterial. The dismissal of criminal charges does not automatically flow from a *Riverside* violation. *See Powell v. Nevada*, 511 U.S. 79, 84 (1994). Nor is there any indication that the State exploited the alleged delay to its advantage. Thus, it's unclear what relief (if any) Holifield would have been entitled to, even assuming that more than forty-eight hours passed between his warrantless arrest and the judicial probable-cause determination. Holifield therefore has not met his burden of demonstrating that his counsel was ineffective for failing to raise these issues.

## IV.    Identification

Holifield alleges that he was falsely identified via a "highly suggestive identification procedure." ECF No. 1 at 9. According to Holifield, the informant was twice unable to pick him out of a traditional photo array. Rivamonte then showed the informant a single photograph of Holifield, and the informant identified him as the seller. Holifield contends this false identification unduly influenced the officers' investigation. The Wisconsin Court of Appeals determined that Holifield waived this argument by not timely objecting to the alleged

17

unlawful identification procedure. *See* ECF No. 12-4 at 83–84. The court further determined that Holifield conceded that "a challenge to the use of a single photograph would have failed even if it had not been waived," as he failed to respond to the State's argument. *Id.* at 84. Because this issue was resolved on independent and adequate state-law grounds, I am unable to review the merits of it here. *See Richardson*, 745 F.3d at 268.[2]

Putting waiver aside, Holifield has not demonstrated an entitlement to habeas relief on his identification claim. Eyewitness identification testimony violates a defendant's due process rights only "when it creates a 'substantial likelihood of irreparable misidentification.'" *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1045 (7th Cir. 2003) (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). Here, the informant testified that he first met Holifield when he accompanied a friend to purchase heroin from Holifield in the area where he lived. ECF No. 12-5 at 210–14. The friend later gave the informant the seller's phone number and identified the seller as "Al." *Id.* at 210. The informant also testified that he and Holifield engaged in small talk during each controlled buy. *See id.* at 192, 199, 208. Based on these circumstances, there was not a substantial likelihood that the informant misidentified Holifield, even assuming the identification procedure was unduly suggestive.

## V.     Informant's Immunity

Holifield alleges that his lawyer failed to investigate and challenge the informant's "off-the-record" immunity deal. ECF No. 1-1 at 3–4. He believes the informant wrongly testified that he was appearing on his own "free will because it was time to turn his life around." *Id.* at 3. The truth—according to Holifield—was that the informant received a deal on a pending

---

[2] To the extent Holifield claims that counsel was ineffective for failing to timely object to the allegedly improper identification, that claim is defaulted as well—Holifield conceded (through waiver) that a such a challenge would have been unsuccessful.

forgery case and was never charged after the police found him inside a drug house "with a heroin needle in his possession." ECF No. 14-1 at 18. To support this argument, Holifield points out that the informant's attorney on the forgery case was present during the informant's testimony against Holifield. *Id.*

The Wisconsin Court of Appeals determined that Holifield's immunity claim was contradicted by the record, as the informant and Rivamonte both testified that the informant was not promised anything in exchange for his testimony. ECF No. 12-4 at 82. The court therefore held "[t]here is no merit to Holifield's ineffective assistance claim." *Id.*

The court of appeals' resolution of this issue was not objectively unreasonable. The court correctly determined that the informant and Rivamonte testified there was no deal. *See* ECF No. 168, 184, 212, 240–41. That the informant's pending charges apparently were resolved in a manner favorable to him does not prove the existence of an off-the-record promise of leniency in exchange for testimony against Holifield. Holifield nevertheless contends he should have been allowed more latitude in cross-examining the informant about drug treatment court and a possible withheld sentence. Prior to trial, Holifield's lawyer sought permission to cross-examine the informant on his cooperation and the drug treatment court requirements. ECF No. 12-5 at 55–56. The prosecutor explained that the informant was in drug treatment court on a forgery case but that he wasn't involved in that case and didn't have any discussions with the prosecutor who was handling it. *See id.* at 56, 168–69. The trial court permitted both sides to asks a few questions about a possible deal and the informant's pending charges, and they did. *See id.* at 169. Holifield has not sufficiently explained what more his lawyer could have done or (crucially) how further questioning would have affected the outcome of his trial. Accordingly, Holifield has not met his burden of demonstrating that he

19

is entitled to relief under § 2254 on his claim that the informant received immunity for his testimony.

## VI.    Informant's Statements

Holifield alleges that the State withheld the audio or written statements made by the informant. ECF No. 1-2 at 4. He did not present this claim in state court; thus, it is procedurally defaulted, and I cannot review it here. Moreover, Holifield merely speculates—without any supporting evidence—that these statements even exist. *See* ECF No. 14-1 at 21–24. And speculation does not merit an evidentiary hearing "to determine the whereabouts of the statements," ECF No. 2 at 12. Accordingly, Holifield has not met his burden of demonstrating that he is entitled to relief under § 2254 on his claim concerning the informant's alleged statements.

## VII.   Identification of Natasha Davis

Holifield alleges that his lawyer failed to obtain the proper documentation to prove that he may have been mis-identified. ECF No. 1-1 at 5–6. He believes Rivamonte lied when he said that officers and the informant positively identified his girlfriend, Natasha Davis, during the third controlled buy on August 31, 2010. Holifield claims to have proof that Davis was working out of state at that time; he faults his lawyer for not doing more to present this evidence to the jury.

At trial, the informant testified that Holifield's girlfriend was present during the third controlled buy. *See* ECF No. 12-5 at 226. Rivamonte also testified that the informant positively identified Davis. *See id.* at 315–16. Davis testified on behalf of the defense. Prior to her testimony, defense counsel sought permission to introduce evidence—three handwritten receipts from the "Gold Nugget," a strip club located in Iron Mountain, Michigan, where

20

Davis apparently tended bar and danced under the stage name "Luscious"—showing that Davis was working out of state on August 31, 2010. *Id.* at 532–42; *see also* ECF No. 12-3 at 162. The trial court denied counsel's request on hearsay and reliability grounds. *See* ECF No. 12-5 at 539–45. The court did, however, permit Davis to testify about her whereabouts on the 31st. She stated that she was in Michigan working as a bartender/exotic dancer on that day. *See id.* at 555–56.

The Wisconsin Court of Appeals determined that Holifield's trial lawyer was not ineffective for failing to raise the identification issue or present the alibi evidence from his girlfriend. ECF No. 12-4 at 81–82. The court noted that "the crux of the defense case was that" Holifield had been misidentified. *Id.* at 82. The court also noted that counsel "fought hard, albeit unsuccessfully, to have Holifield's girlfriend's pay stubs admitted" and that counsel "successfully presented the girlfriend's testimony." *Id.*

The court of appeals' decision did not contradict nor unreasonably apply clearly established federal law and did not involve an unreasonable determination of the facts. Defense counsel tried to get the receipts admitted. She also explained, "I've been trying for about ten days to get somebody from the Golden Nugget to call me back so I can get something that more resembles a business record and I have not been able to get a hold of anybody." ECF No. 12-5 at 542. Counsel's efforts were reasonable given the cards she was dealt. So too was the trial court's evidentiary ruling on the issue. Accordingly, Holifield has not met his burden of demonstrating that he is entitled to relief under § 2254 on his claim concerning the alleged misidentification of Davis during the third controlled buy.

21

## VIII.  Drug Analyst's Report

Holifield alleges that counsel relieved the State of its burden of proof and right to cross-examine the drug analyst by stipulating that the State could introduce the drug analyst's report (that the drugs inside the home were cocaine and heroin) rather than insisting on testimony and cross-examination of the analyst. ECF No. 1-1 at 6. According to Holifield, the State failed to disclose the report within thirty days and counsel failed to explain the stipulation to him. Thus, in Holifield's view, the stipulation should not be legally binding against him. He also maintains that counsel failed to investigate and challenge the defects within the report.

The Wisconsin Court of Appeals held that Holifield forfeited his right to challenge the results of the drug testing and to confront the drug analyst when he agreed to the stipulation. ECF No. 12-4 at 86. The court noted that Holifield personally agreed to the stipulation on the record and never complained that counsel's explanation was lacking or that he needed more time to consider the stipulation.

The state court reasonably found that Holifield forfeited this claim by entering into the written stipulation and agreeing to the stipulation on the record. The case cited by Holifield—*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009)—is factually inapposite; it involved the admission of certificates into evidence *over* the objection of the defense. Here, Holifield entered into a stipulation regarding the drug analyst's report; he did not object. Indeed, he expressed no reservations about the stipulation when asked about it on the record by the trial court, and he twice told the court the he had had enough time to discuss the stipulation with his lawyer. *See* ECF No. 12-5 at 405–07. Accordingly, Holifield has not met his burden of demonstrating that he is entitled to relief under § 2254 on his claim concerning the drug analyst's report.

## IX.    Sufficiency of the Evidence

Holifield alleges that the evidence presented at trial was insufficient to support his conviction. ECF No. 1-1 at 7. He first maintains the State would not have met its burden of proof absent the unreliable identification testimony and the evidence illegally obtained via that search warrant. But, as discussed above, this evidence was properly admitted. Holifield also maintains the State failed meet its burden of proof on the party-to-the-crime element, the keeping-of-a-drug-house charge, and the constructive-possession charge. The Wisconsin Court of Appeals rejected this argument, noting that officers found controlled substances in a pair of pants that were located at the foot of the bed Holifield had been sleeping in. *See* ECF No. 12-4 at 81. Although Holifield denied the pants were his, the court explained that the jury could have reasonably believed they were, given that "the telephone number assigned to the cell phone found in the pants matched the number [the informant] called when he set up the August 31, 2010 drug transaction." *Id.*

The court of appeals' decision was not objectively unreasonable. Put simply, the circumstantial evidence in the record was sufficient to sustain Holifield's conviction. The fact that the cash found in the pants along with drugs was apparently returned to Holifield's grandmother after trial, *see* ECF No. 14-1 at 29, does not prove the drugs were not his. Holifield therefore has not met his burden of demonstrating that he is entitled to relief under § 2254 on his sufficiency-of-the-evidence claim.

## X.    Juvenile Records

Finally, Holifield alleges that the trial court abused its discretion when it considered Holifield's juvenile records during his adult sentencing hearing. ECF No. 1-1 at 7. He contends "[t]he United States Supreme Court has ruled that the defendant's juvenile record

23

may not be used against him at his adult sentencing hearing, because it violates the defendant's Sixth Amendment right to counsel." ECF No. 14-1 at 29. He cites two Supreme Court cases in support: *United States v. Tucker*, 92 S. Ct. 589 (1972) and *Gideon v. Wainwright*, 372 U.S. 335 (1963). These cases, however, involved the improper consideration of *adult* convictions obtained in violation of the right to counsel. They are of no help to Holifield here.

Juveniles have had the right to counsel in juvenile proceedings since 1967. *See In re Gault*, 387 U.S. 1 (1967). Holifield was born in 1975. Thus, as the Wisconsin Court of Appeals reasonably determined, the trial court clearly did not consider any pre-*Gault* juvenile adjudications or convictions. *See* ECF No. 12-4 at 85–86. And Holifield does not otherwise argue that he did not have counsel during any of the juvenile proceedings purportedly relied upon at his sentencing hearing. Accordingly, Holifield has not met his burden of demonstrating that he is entitled to relief under § 2254 on his claim concerning the alleged improper consideration of his juvenile records.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, I cannot conclude that the assessment of the merits of Holifield's claims is debatable by reasonable jurists.

24

Moreover, where a petition is denied (here, in part) on procedural grounds, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Here, no reasonable jurist would find the court's procedural rulings debatable. Accordingly, a certificate of appealability will be denied.

## CONCLUSION

For the reasons given above, the petition is **DENIED** and the case is **DISMISSED**. A certificate of appealability is **DENIED**. The clerk will enter judgment accordingly.

**SO ORDERED** this <u>29th</u> of May, 2020.

STEPHEN C. DRIES
United States Magistrate Judge

25